UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| EDWARD LYLES, | ) |
| | ) |
|     *Plaintiff*, | ) |
| v. | ) 1:15-CV-354 |
| | ) Judge Curtis L. Collier |
| MEGAN J. BRENNAN, *Postmaster General*; | ) Magistrate Judge Christopher H. Steger |
| UNITED STATES POSTAL SERVICE, | ) |
| | ) |
|     *Defendant*. | ) |

**M E M O R A N D U M**

Before the Court is Plaintiff Edward Lyles's motion for partial summary judgment (Doc. 52) on his Title VII claims. Defendant responded in opposition (Doc. 58), and Plaintiff replied (Doc. 61). For the following reasons, Plaintiff's motion (Doc. 52) will be **DENIED**.

**I.      BACKGROUND**

Plaintiff is a mail carrier for the United States Postal Service ("Defendant") at a facility in Chattanooga, Tennessee—a position he has held for some twenty-five years. (Doc. 54-3.) His employment, however, came to a temporary end after an on-the-job accident.

Plaintiff delivered mail to an apartment complex in Chattanooga on August 28, 2012. (*Id.* at 3.) He parked his truck in a parking lot in front of the community mailboxes. (Doc. 54-4.) After the deliveries were made, Plaintiff returned to his truck. Unbeknownst to him, though, a young girl had sat down in the parking lot towards the front of the vehicle. (*Id.*) When Plaintiff pulled away, he hit the girl, injuring her leg.

An investigation ensued, and Plaintiff was fired two weeks later. In its "notice of removal," Defendant charged Plaintiff with an "unsafe act" in violation of the postal service standards of

conduct. (Doc. 54-3.) It specifically alleged Plaintiff struck the child because he had failed to ensure his surroundings were clear before departing the parking lot. This, according to Defendant, amounted to a terminable offense. (*Id.*)

Plaintiff disagreed and challenged his termination in arbitration. The question before the arbitrator was whether the evidence showed, by a preponderance, that Defendant had "just cause" to fire Plaintiff. (Doc. 54-3.) After conducting a hearing, the arbitrator answered that question in the negative—he found Plaintiff neither operated his truck unsafely, nor otherwise violated any postal service standards of conduct. (*Id.*) Cleared of fault, Plaintiff was reinstated to his mail carrier position with full back pay. (*Id.*)

But Plaintiff did not stop there. He filed the instant suit on June 30, 2017, alleging Title VII violations. (Doc. 1.) He first claims his termination was racially discriminatory; as grounds, he notes Defendant has offered no nondiscriminatory reason for the termination other than his role in the accident, for which the arbitrator absolved him of blame. He also claims Defendant retaliated against him for pre-accident conduct. As it turns out, Plaintiff had previously filed Equal Employment Opportunity ("EEO") complaints against two Defendant managers—Michael Whalen and Tamara Woodard-Henderson.[1] (Doc. 54-1.) One of these EEO cases was closed on July 22, 2011, the other on January 20, 2012, just a few months before the accident. (*Id.*) His termination, Plaintiff says, was retaliation for these EEO complaints.

Before the Court now is Plaintiff's motion for partial summary judgment, but not on the merits of his Title VII claims. What Plaintiff seeks, rather, is to use the arbitration decision preclusively. Specifically, Plaintiff argues the doctrine of issue preclusion, here, does two things:

---

[1] Notably, both Whalen and Woodard-Henderson participated in the initial investigation into the mail truck accident. (Doc. 54-1.)

(1) establishes liability on Defendant's part by preventing it from relying on the accident as the basis for its termination decision, and (2) prevents the Court from reconsidering the arbitrator's findings of fact.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). The non-moving party, however, "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The court views the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

## III. DISCUSSION

Issue preclusion, or collateral estoppel, bars the re-litigation of issues that have already been litigated. A four-part test instructs when to apply the doctrine:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

3

*United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003). The element of particular relevance, here, is the first; Plaintiff argues that certain issues were raised and actually litigated in the prior arbitration that cannot be raised and re-litigated in his Title VII action.

**A. Defendant's Reliance on the Accident as the Basis for Plaintiff's Termination**

Title VII prohibits race-based discrimination. *See* 42 U.S.C. § 2000e-16. To establish a *prima facie* case of racial discrimination, the plaintiff must show: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) he was treated differently than similarly-situated employees outside the protected class. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992). This provision also prohibits retaliation against an employee for alleging discriminatory conduct. To make out his *prima facie* case for retaliation, the plaintiff must show: (1) he engaged in protected activity; (2) his employer knew about the activity; (3) he suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action. *See Harris v. Metro Gov't of Nashville & Davidson Cty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010).

Once the plaintiff establishes his *prima facie* case under either of these claims, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1992); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Mitchell*, 964 F.2d at 584 n.6. If the employer carries its burden, the plaintiff then may prove, by a preponderance, that the legitimate reasons offered by the employer were merely a pretext to discriminate. *Mitchell*, 964 F.2d at 584 n.6.

Plaintiff argues the arbitrator's finding that he was not at fault for the accident establishes Defendant's liability for his Title VII claims. This is so, he says, because issue preclusion prevents Defendant from relying on the accident as the basis for his termination—which is precisely what

4

he anticipates Defendant will do under the *McDonnell Douglas* framework. Indeed, he notes, the accident is the *only* nondiscriminatory reason Defendant has ever offered for Plaintiff's termination. That reason, though, was already "actually litigated" in a "prior proceeding," he argues—an arbitrator reviewed the evidence surrounding the on-the-job accident and exculpated him. Plaintiff says Defendant is therefore collaterally estopped from raising the issue of Plaintiff's involvement in the accident yet again in his Title VII action. And having expressed no other nondiscriminatory basis for the termination, Defendant has failed to satisfy its *McDonnell Douglas* burden, according to Plaintiff.

Not so, according to Defendant. It argues that issues essential to Plaintiff's Title VII claims were never actually litigated and decided at arbitration. For starters, Defendant argues, Plaintiff has leapt over the first step in the *McDonnell Douglas* framework—namely, establishing his *prima facie* case. The arbitrator never considered whether similarly-situated employees were treated differently, *Mitchell*, 964 F.2d at 582-83, or whether a causal connection existed between Plaintiff's EEO complaints and his termination, *Harris*, 594 F.3d at 485. Instead, Defendant notes, the focus at arbitration was more narrowly aimed at whether Defendant had "just cause" to fire Plaintiff based on the circumstances surrounding the accident. Defendant also argues that the arbitrator's decision does not preclude Defendant's reliance on the accident as its nondiscriminatory basis for the termination. It points out that where an employer holds "an honest belief in the nondiscriminatory basis upon which it has made its employment decision," the employee cannot establish pretext. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012).

The arbitrator, as Defendant notes, considered neither pretext nor whether Defendant held an honest belief in its reason for terminating Plaintiff.[2]

Defendant's points are well-taken. The first hurdle Plaintiff must clear in bringing Title VII claims is making his *prima facie* case. As to racial discrimination, this means showing similarly situated employees outside the protected class were treated differently, *Mitchell*, 964 F.2d at 582-83; and for retaliation, it requires that Plaintiff make a causal connection between Plaintiff's EEO complaints and his termination, *Harris*, 594 F.3d at 485. Only then does the burden shift to Defendant to advance a nondiscriminatory reason for Plaintiff's termination. But the arbitrator made neither of these preliminary findings. The sole issue before him was whether Defendant had "just cause" to fire Plaintiff based on his involvement in the on-duty accident. Because these issues essential to Plaintiff's Title VII claims were never "actually litigated" at arbitration, issue preclusion does not establish Title VII liability on Defendant's part.

Nor does it prevent Defendant from relying on the accident as its nondiscriminatory reason for terminating Plaintiff. The arbitrator did conclude Plaintiff was not at fault for the accident. And Defendant, at no point, has offered any alternative reason for firing Plaintiff—which, according to Plaintiff, smells pretextual. However, as Defendant points out, where an employer holds an "honest belief" in the nondiscriminatory basis upon which it has made its employment decision, the adversely affected employee cannot establish pretext. *Tingle*, 692 F.3d at 530. This is the case even where the employer's conclusion is later shown to be "mistaken, foolish, trivial, or baseless." *Id.* at 531. Perhaps Defendant did *not* honestly believe Plaintiff was to blame for the

---

[2] Defendant also argues that issue preclusion does not apply here, specifically because the collective bargaining agreement at play does not mandate arbitration of statutory claims. The Court need not reach that question, though, because issue preclusion is inapplicable for the reasons the Court explains below.

accident. But the arbitrator never considered that question. As a result, Defendant is not collaterally estopped from relying on the accident in defense against Plaintiff's Title VII allegations.

**B. Preclusive Effect of the Arbitrator's Findings of Fact**

Plaintiff concedes Defendant may be able to advance an "honest belief" argument at trial. (Doc. 61.) In the alternative, however, Plaintiff argues Defendant is, at the very least, bound by the arbitrator's findings of fact and his ultimate conclusion that Plaintiff was not at fault for the accident.[3] In so arguing, Plaintiff primarily relies on the growing judicial recognition that arbitration is a suitable forum in which to decide statutory civil rights claims. Before, he notes, arbitrators' "specialized competence" was limited to labor contracts. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53 (1974). But the Supreme Court has since recognized arbitrators' "capacity to resolve complex questions of fact and law" beyond contract disputes. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009) (holding collective bargaining agreements that require union members to arbitrate employment discrimination claims—as opposed to purely contractual claims—enforceable as a matter of law). Plaintiff also points to sister circuits that have afforded at least some degree of preclusive effect to arbitration decisions. (Doc. 54 at 7–8.) Following suit here, he argues, would save the Court from having to re-address the factual basis of his termination.

As an initial matter, Plaintiff is correct to note that the Supreme Court expressed a more favorable view of arbitration as an adjudicatory forum in *14 Penn Plaza* than it had previously. The Court, though, stopped well short of suggesting arbitration decisions *always* have preclusive effect in subsequent proceedings. And while Plaintiff points to a number of other preclusion-

---

[3] Plaintiff made the bulk of this argument in his reply brief. As a result, Defendant has not offered a detailed response to it.

friendly circuits, he fails to contend with the Sixth—namely, its decision in *Becton v. Detroit Terminal Consol. Freightways*, 687 F.2d 140 (6th Cir. 1982).

The plaintiff in *Becton* challenged his termination in arbitration. The arbitrator found the employer had "just cause" to fire the plaintiff after he had disobeyed company orders. *Becton*, 687 F.3d at 141. The plaintiff then brought a discrimination claim against the employer in federal court. The district court found that the plaintiff succeeded in making his *prima facie* case, and the employer offered the arbitration decision in rebuttal. *Id*. The court then concluded it was collaterally estopped from reconsidering evidence accepted at arbitration, limiting its inquiry to whether the "just cause" found by the arbitrator was merely a pretext to discriminate. *Id*. In the district court's view, the "just cause" issue did not involve "facts . . . relative to discrimination"; the plaintiff was therefore entitled to de novo review of his discrimination claim, but not reconsideration of the evidence related to his contract claim. *Id*. at 142.

The Sixth Circuit Court of Appeals reasoned differently. It found there was no realistic way to sever the discharge from the discrimination claim, because, according to the plaintiff, the discharge *was* the discrimination—the "analysis of one must include consideration of the other." *Id*. Wary of restricting the extent to which a claimant may develop his or her evidence of discrimination, the Sixth Circuit held that "a federal court may, in the course of trying a Title VII or section 1981 action, reconsider evidence rejected by an arbitrator in previous proceedings." *Id*.

A similar severance problem exists here. Should Plaintiff make his *prima facie* case on the merits, Defendant will likely advance an "honest belief" rebuttal. (*See* Doc. 58 at 7.) But in order to do so, Defendant must necessarily address the basis for the termination—that is, whether it honestly believed it had "just cause" to fire Plaintiff based on the circumstances surrounding the accident. To preclude Defendant from revisiting this evidence would be to deprive it of a defense

8

it is entitled to make. And one that, as explained above, was neither raised nor actually litigated in the prior arbitration. The Court declines to do so here.[4]

This is not to say, however, that the Court cannot consider the arbitration decision at all. Indeed, a district court may admit an arbitrator's decision as evidence based on a number of factors: (1) the degree of procedural fairness at arbitration, (2) the adequacy of the record with respect to the issue of discrimination, (3) the special competence of particular arbitrators, or (4) whether the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record. *Nance*, 527 F.3d at 549. As the case proceeds on the merits, the Court remains free to accord the appropriate weight to the arbitration decision, taking these factors into account.

## III. CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiff's motion. (Doc. 52.)

**An order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

[4] Plaintiff also fails to contend with *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539 (6th Cir. 2008), which, citing *Becton*, called for de novo review in the district court of the same claims the plaintiff had already submitted to arbitration: "[I]f a plaintiff does not expressly waive her right to bring claims in federal court, a prior arbitration does not preclude us from reconsidering all factual issues underlying a statutory claim." *Id.* at 549.