UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| EDWARD LYLES, | ) | |
|---|---|---|
| *Plaintiff,* | ) ) ) | No. 1:15-CV-354 |
| v. | ) ) | Judge Collier |
| MEGAN J. BRENNAN, *Postmaster General*, and UNITED STATES POSTAL SERVICE, | ) ) ) | Magistrate Judge Steger |
| *Defendants.* | ) | |

# **M E M O R A N D U M**

Before the Court is a motion by Defendant Megan J. Brennan, Postmaster General, for summary judgment on the specific issue of judicial estoppel. (Doc. 85.) Plaintiff has responded in opposition (Doc. 89), and Defendant has replied (Doc. 91). The Court will **GRANT** Defendant's motion for summary judgment for the reasons set out below.

## I.  **BACKGROUND**

On August 28, 2012, Plaintiff Edward Lyles ("Plaintiff"), a United States Postal Service ("USPS") carrier, was involved in a mail truck accident, which resulted in injury to a minor child. (Doc. 2 at 2.) Plaintiff's supervisors investigated the incident, ultimately recommending Plaintiff be removed from his position. (*Id.*) Plaintiff was terminated on September 13, 2012, and he filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") on December 12, 2012. (Doc. 2 at 3.) Plaintiff alleged his termination was based on racial discrimination and was in retaliation for his prior complaints to the EEOC in March and October 2011. (*Id.*) The EEOC denied Plaintiff's complaint in a Final Agency Decision on March 14, 2014, and he was advised of his right to file suit. (Doc. 85-1 at 6.) Plaintiff appealed the decision to the Office of Federal Operations, which affirmed the Agency's decision on April 21, 2015. (*Id.*

at 26.) Plaintiff requested reconsideration of the decision, but the request was denied on September 25, 2015. (*Id.* at 33.)

During this time, Plaintiff's union, the National Association of Letter Carriers, filed a grievance on Plaintiff's behalf contesting his termination. (Doc. 54-3 at 3.) After reaching an impasse in November 2012, the union and USPS submitted the dispute for arbitration. (*Id.*) On March 4, 2013, the arbiter concluded that USPS failed to prove Plaintiff was at fault for the vehicle accident and thus he should not have been terminated. (*Id.* at 13.) Plaintiff was reinstated that same day and received full back pay. (*Id.*)

On September 19, 2013, Plaintiff filed for Chapter 13 bankruptcy. (*In re Lyles*, No. 1:13-bk-14664-NWW, Doc 1.)[1] The bankruptcy court accepted his bankruptcy plan on November 8, 2013, but the case was ultimately dismissed on December 17, 2015, for failure to make plan payments. (*In re Lyles* at Docs. 25, 43.)

On December 30, 2015, Plaintiff filed a civil suit against USPS raising the same claims he alleged in his 2012 EEOC complaint, namely that his termination was based on racial discrimination and in retaliation for prior EEOC activity in violation of Title VII of the Civil Rights Act of 1964. (Doc. 2.) Plaintiff is seeking equitable relief and compensatory damages. (*Id.*) Service of process was properly completed on April 25, 2017. (Docs. 27, 46.) Defendants answered on June 19, 2017 (Doc. 28), and amended their answer to raise the issue of judicial estoppel on June 21, 2019 (Doc. 83).

---

[1] "Federal courts may take judicial notice of proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969) (collecting cases).

Before the Court now is Defendant's motion for summary judgment on the specific issue of judicial estoppel. Defendant contends Plaintiff failed to include his claim against USPS in his Chapter 13 bankruptcy filing and thus is judicially estopped from raising that same claim in this case. (Doc. 85.)

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

If the moving party meets its initial burden, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). A genuine issue for trial exists if there is "evidence on which the jury could reasonably find for the plaintiff." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (internal quotations omitted). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson*, 477 U.S. at 248–49. The court should view the evidence, including all reasonable inferences, in the

light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). If the court concludes, based on the record, that a fair-minded jury could not return a verdict in favor of the non-movant, the court should grant summary judgment. *Anderson*, 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

The Court will first address Plaintiff's claim that the doctrine of laches precludes application of judicial estoppel. The Court will then discuss the application of judicial estoppel if laches does not preclude its consideration.

### A. Whether the Doctrine of Laches Precludes Application of Judicial Estoppel

Plaintiff contends the doctrine of judicial estoppel should not even be considered because Defendant "failed to raise judicial estoppel for over three years of this litigation to the prejudice of [Plaintiff]." (Doc. 89 at 4.) Specifically, Plaintiff argues Defendant could easily have checked PACER for bankruptcy filings or served written discovery on Plaintiff and discovered his prior bankruptcy. (*Id.*) Instead, Plaintiff contends Defendant did not act with diligence by failing to take such steps to learn of his bankruptcy. (*Id.*) Plaintiff thus appears to be invoking the doctrine of laches.

Defendant argues laches does not apply to judicial estoppel and, even assuming it could, it does not apply here. (Doc. 91.) Defendant notes service of process was not officially completed until April 2017, meaning Defendant has only been part of the lawsuit for about two years. (*Id.*) Defendant further explains that Plaintiff filed a motion for partial summary judgment on March 6, 2018, which was not resolved until August 16, 2018. (*Id.*) The government shutdown further

4

delayed proceedings until February 6, 2019.  (*Id.*)   Defendant contends that when she finally was able to engage in normal discovery, she learned of Plaintiff's bankruptcy based on medical records received on May 28, 2019.  (*Id.*)   Defendant investigated the bankruptcy, learned the EEO claim had not been disclosed, and filed the amended answer on June 14, 2019.  (*Id.*)   Defendant asserts her choice not to serve written discovery on Plaintiff is not evidence of lack of diligence, but rather demonstrates an economical litigation strategy that benefited Plaintiff.  (*Id.*)   Defendant claims the record shows an active and diligent effort to defend the action.  (*Id.*)

"In this circuit, laches is 'a negligent and unintentional failure to protect one's rights.'" *United States v. City of Loveland, Ohio*, 621 F.3d 465, 473 (6th Cir. 2010) (quoting *Herman Miller, Inc. v. Palazzetti Imp. & Exp., Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)).  "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it."  *See Bone v. Taco Bell of Am., LLC*, 956 F. Supp. 2d 872, 886 (W.D. Tenn. 2013) (citing *City of Loveland,* 621 F.3d at 473).

Defendant is correct that there is uncertainty in the Sixth Circuit as to whether laches may even be raised in opposition to an affirmative defense.  *Bone*, 956 F. Supp. 2d at 886 (explaining the Sixth Circuit Court of Appeals has only held laches can be invoked in a pleading and thus "[p]laintiff may not be able to raise laches in opposition to an affirmative defense"); *Coach Inc. v. Hayes & Co.*, No. 11-10-DLB, 2012 WL 1221873, at *6 (E.D. Ky. Apr. 10, 2012) ("It is not sufficient to assert laches as an affirmative defense in response to a motion. Instead, Federal Rule of Civil Procedure 8(c)(1) required Seagraves to assert laches in her first responsive pleading, which she failed to do."); *but see In re Ross*, 367 B.R. 577, 581 (Bankr. W.D. Ky. 2007) ("[W]hile the judicial estoppel argument has merit, it is an equitable doctrine, subject to equitable defenses,

5

such as laches and waiver."). The Sixth Circuit Court of Appeals, however, has not clearly held laches cannot be raised in response to the affirmative defense of judicial estoppel. Thus, the Court will assume the doctrine of laches can be raised in this case.

The application of laches is not primarily focused on the length of time that has elapsed, "but rather whether the party relying on laches as a defense has been prejudiced by the delay." *Gary R. Prince Revocable Trust v. Blackwell*, 735 F. Supp. 2d 804, 819 (M.D. Tenn. 2010). Prejudice from a delay can arise from issues such as witnesses' deaths, degrading memories, or loss of evidence. *See id.* (citing *Brown v. Ogle*, 46 S.W.3d 721, 728 (Tenn. Ct. App. 2000)). Thus, laches seeks to prevent a party from sleeping "on his or her rights for an unreasonably long time," which impedes the other party's ability to defend his case. *See Gary R. Prince Revocable Trust*, 735 F. Supp. 2d at 819.

Plaintiff has not claimed any evidence or witnesses necessary to rebut Defendant's assertion of judicial estoppel have been lost as a result of the delay. The only prejudice Plaintiff alleges Defendant's delay caused is the time and expenses he incurred in addressing Defendant's motion to dismiss and Plaintiff's motion for partial summary judgment. (Doc. 89.)

Pecuniary loss can be sufficient to establish prejudice, but only if it is actually caused by an inexcusable delay. *Gruca v. U.S. Steel Corp.*, 495 F.2d 1252, 1260 (3d Cir. 1974). "[G]eneric claims of prejudice do not suffice for [a] laches defense in any case." *See In re Beaty*, 306 F.3d 914, 928 (9th Cir. 2002).

Plaintiff has not offered any evidence that the expenses he incurred were in any way caused by Defendant's delay in learning of his bankruptcy. (Doc. 89.) Defendant's motion to dismiss arose as a result of a claim of insufficient service of process. (Doc. 29.) The motion was resolved

6

before Defendant's initial answer was ever filed. (*Id.*) Plaintiff would have incurred litigation expenses in responding to the motion regardless of when Defendant sought application of judicial estoppel.

In addition, Plaintiff's motion for partial summary judgment was filed on March 6, 2018 (Doc. 51), just four months after discovery had begun and nearly five months before the parties expected to complete discovery (Doc. 47). Plaintiff chose to file a motion for partial summary judgment, and incur the associated costs, while discovery was still ongoing. Plaintiff therefore assumed the risk that Defendant might later discover evidence which could undermine his case. Further, Plaintiff has offered no evidence to suggest Defendant's delay in learning of the prior bankruptcy would have changed when Plaintiff chose to file his motion for partial summary judgment. As a result, even viewing the evidence in the light most favorable to the non-movant, Plaintiff has not sufficiently alleged a lack of diligence by Defendant that prejudiced Plaintiff's ability to respond to the defense of estoppel. The Court will thus proceed to its analysis of the judicial estoppel defense.

### B. Whether Judicial Estoppel Applies to Plaintiff's Claim Against Defendant

The doctrine of judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 n.8 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 (2000)) (internal quotations omitted). The doctrine is designed to protect the integrity of the judicial system by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *See New Hampshire*, 532 U.S. at 750 (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)). "Judicial estoppel, however, should be applied with

caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.'" *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (citing *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

For judicial estoppel to apply in cases involving prior bankruptcy proceedings, a court must find (1) the party "assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the party's] omission did not result from mistake or inadvertence." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010).

Defendant argues Plaintiff failed to include his claim against USPS as an asset in his bankruptcy filings and thus is asserting a contrary position in this case from the one he asserted in bankruptcy court. (Doc. 84 at 4.) Defendant contends the bankruptcy court adopted that position by confirming the Chapter 13 plan and the omission was not due to mistake or inadvertence. (*Id.*) Defendant thus asserts Plaintiff should be judicially estopped from raising the same claim against Defendant in this case. (*Id.*)

Plaintiff argues he was unaware he had to include his claim against USPS in his bankruptcy filings because the form's language was unclear. (Doc. 89.) He also asserts that he did not view his claim as having any monetary value until after the bankruptcy case was dismissed. (*Id.*) Further, Plaintiff contends there is no evidence of bad faith that would warrant imposition of judicial estoppel. (*Id.*)

### 1. Whether Plaintiff Assumed a Contrary Position

A debtor has an affirmative duty to disclose all of his assets to the bankruptcy court. *See* 11 U.S.C. §§ 521(a)(1), 541(a)(7); *White*, 617 F.3d at 479. "[T]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *White*, 617 F.3d at 480 n.7. A potential cause of action constitutes an asset that a debtor must disclose. *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) ("It is well-settled that a cause of action is an asset that must be scheduled under 521(1)."). An omission of a potential cause of action in an initial bankruptcy filing constitutes an assumed "position." *See White*, 617 F.3d at 479 (finding the omission of a harassment claim in the party's bankruptcy filings "essentially stated the harassment claim did not exist"); *Stephenson v. Malloy*, 700 F.3d 265, 274 (6th Cir. 2012) (explaining the failure to disclose claims in the bankruptcy filings "was equivalent to a statement that there were no such claims . . . .").

Here, it is undisputed that Plaintiff failed to list his claim against USPS in his bankruptcy filing. (Doc. 89-1 at 9.) It is further undisputed that Plaintiff failed to amend his filing or otherwise notify the bankruptcy court regarding his claim against USPS. (Docs. 86, 89.) Thus, Plaintiff's failure to disclose his claim against USPS constituted a statement to the bankruptcy court that the claim did not exist. *See White*, 617 F.3d at 479. In contrast, Plaintiff has filed this lawsuit raising the same claim he failed to disclose to the bankruptcy court. Thus, the Court finds the undisputed facts demonstrate Plaintiff has taken a position contrary to the one he took in filing with the bankruptcy court.

## 2. Whether the Bankruptcy Court Adopted the Contrary Position

After a Chapter 13 plan is filed, the bankruptcy court must evaluate the plan before confirming it. 11 U.S.C. § 1325. A bankruptcy court's confirmation of a plan constitutes an adoption of the party's position for judicial estoppel purposes. *Lewis*, 141 F. App'x at 425.

Here, there is no dispute that Plaintiff's bankruptcy disclosures made no mention of any potential claim against USPS. (*In re Lyles*, No. 1:13-bk-14664-NWW, Doc 1.) It is further undisputed that the bankruptcy court accepted Plaintiff's Chapter 13 plan without any changes. (*In re Lyles* at Doc. 25.) That is sufficient to satisfy the second prong of *White*. *See* 617 F.3d at 478. Accordingly, the Court finds there is no dispute that the bankruptcy court adopted Plaintiff's contrary position.

## 3. Whether Plaintiff's Omission Resulted from Mistake or Inadvertence

The Court of Appeals for the Sixth Circuit has instructed that in evaluating if an omission resulted from mistake or inadvertence, a court should consider whether "(1) [the party] lacked knowledge of the factual basis of the undisclosed claims; (2) [he] had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *White*, 617 F.3d at 478.

### a. Whether Plaintiff lacked knowledge of the factual basis of the undisclosed claim

A party possesses the requisite knowledge of the undisclosed claim's factual basis if he "had sufficient information to know that [he] had a possible cause of action . . . before [his] bankruptcy was discharged." *Davis v. Fiat Chrysler Auto. U.S., LLC*, 747 F. App'x 309, 314 (6th Cir. 2018). Establishing a party has previously filed an EEOC complaint raising the same issues demonstrates knowledge of the claim's underlying factual basis. *See White*, 617 F.3d at 479

("White had knowledge of the factual basis of the undisclosed harassment claim, since she had already filed a complaint before the EEOC.").

Here, it is undisputed that Plaintiff filed an EEOC complaint on December 12, 2012, alleging discrimination and retaliation for his termination, which is the same claim he has alleged in this case. (Doc. 86.) The record demonstrates the complaint was filed nearly a year before Plaintiff's bankruptcy proceedings began. (Doc. 85-1; *In re Lyles* No. 1:13-bk-14664-NWW, Doc 1.) Plaintiff also does not dispute he had knowledge of the factual basis of the undisclosed claim prior to filing for bankruptcy. (Doc. 89.) Thus, there is no genuine dispute that Plaintiff had the requisite knowledge of the factual basis of his undisclosed claim.

### b. Whether Plaintiff had a motive for concealment

The Sixth Circuit has consistently recognized that a Chapter 13 petitioner generally has a motive to conceal assets from the bankruptcy court in order to retain assets that would otherwise be distributed to his creditors. *See White*, 617 F.3d at 479 (citing *Lewis*, 141 F. App'x at 426 ("It is always in a Chapter 13 petitioner's interest to minimize income and assets.")). Even potential lawsuits can create a motive for concealment as their inclusion as an asset can impact the bankruptcy proceeding. *See Tyler v. Fed. Express Corp.*, 420 F. Supp. 2d 849, 858 (W.D. Tenn. 2005) (citing *Walker v. Delta Air Lines, Inc.*, 2002 WL 32136202, at *4 (N.D. Ga. 2002) ("[T]he desire to have a bankruptcy discharged is a motive for concealing a claim since having a potential lawsuit as an asset could dictate the outcome of a bankruptcy proceeding."). To rebut this general inference, a Chapter 13 petitioner must offer evidence demonstrating he lacked an actual motive to conceal the claim. *See, e.g., Eubanks*, 385 F.3d at 898 n.1 (holding Plaintiffs' "constant affirmative actions clearly establish[ed] a desire to apprise the court of the pending claim"); *Javery*

11

*v. Lucent Tech., Inc. Long Term Disability Plan for Mgmt. or LBA Emp.*, 741 F.3d 686, 698 (6th Cir. 2014) (explaining the omitted claim for disability insurance proceeds was statutorily set aside for the benefit of the debtor and thus debtor lacked a motive for concealment); *Browning*, 283 F.3d at 776 (holding the debtor as a trustee had no motive to conceal because all of the assets had to be distributed to the creditors).

Here, there is no dispute that Plaintiff failed to disclose his claim against USPS when he filed for Chapter 13 bankruptcy. (Doc. 89-1.) Defendant asserts this fact is sufficient to establish a motive for application of judicial estoppel. (Doc. 86.) Plaintiff, however, argues he has rebutted this inference with his sworn affidavit, in which he explains he did not seek money in his EEO claim, but rather sought assistance in stopping the discrimination and retaliation by local USPS management. (Doc. 89.) Plaintiff claims he viewed the monetary aspect of his termination as "being handled as a union grievance." (Doc. 89-1.) Setting aside that Plaintiff still had a duty to disclose the claim even if he personally viewed it as valueless, *In re Semel*, 411 F.2d 195, 197 (3d Cir. 1969), Plaintiff is essentially arguing he lacked a motive to conceal the claim from the bankruptcy court because he did not view the claim as providing any monetary benefit. Plaintiff further contends that the bankruptcy form used "technical terminology that an hourly postal carrier would not likely understand." (Doc 89.)

Defendant has responded by pointing to an EEO Investigative Affidavit from February 7, 2013, in which Plaintiff was asked questions regarding his termination and EEOC complaint. (Doc. 91-1.) The affidavit posed twenty-six questions to Plaintiff about the facts he alleged in his complaint. (*Id.*) Question twenty-five asked Plaintiff "Are you seeking compensatory

damages?" and Plaintiff answered "Yes." (*Id.* at 5.) Plaintiff signed each page declaring under penalty of perjury that the information was true and correct. (*Id.*)

At the summary judgment stage, the Court must view the evidence in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587. Here, the evidence shows Plaintiff indicated he was seeking compensatory damages through his EEOC complaint. Plaintiff was asked the question on compensatory damages in an affidavit dedicated to investigating the allegations he raised in his EEOC complaint. (Doc. 91-1.) In addition, the question immediately preceding it, question twenty-four, asked Plaintiff to describe the resolution he was seeking, to which Plaintiff responded he wanted the individuals allegedly responsible for the discrimination and retaliation to be fired. (*Id.*) There is no suggestion in the record that Plaintiff's union grievance proceedings sought anything other than reinstatement and back pay. (Doc. 54-3.) Thus, the only fair inference from question twenty-four is that Plaintiff understood it was asking for his desired resolution of the EEOC complaint. (Doc. 91-1.) As a result, the Court cannot reasonably infer Plaintiff's response to question twenty-five referred to his union grievance.

Plaintiff's current assertion that he did not seek monetary damages in his EEOC complaint directly contradicts his answer in the EEO Affidavit that he was seeking compensatory damages. (Doc. 89-1.) A plaintiff cannot create an issue of fact by offering an affidavit after a motion for summary judgment is filed that directly conflicts with his prior sworn testimony. *See France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). "If the affidavit directly contradicts prior sworn testimony, it should be stricken 'unless the party opposing summary judgment provides a persuasive justification for the

13

contradiction.'" *France*, 836 F.3d at 622 (quoting *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)). Plaintiff offers no explanation for the contradiction between his current affidavit and the answers he provided in the EEO Investigative Affidavit, which he declared under penalty of perjury to be true and correct. Thus, the Court can only consider Plaintiff's answer in his EEO Investigative Affidavit that he was seeking compensatory damages in his 2012 EEOC complaint. As a result, the Court finds Plaintiff had a motive to conceal the claim against USPS from his bankruptcy filing as he knew he was seeking monetary damages before he filed for bankruptcy.

Further, Plaintiff's argument fails to address his motive for concealment after the EEOC process ended. On September 25, 2015, Plaintiff had exhausted his administrative appeals and knew his only remaining remedy was to file a civil suit against USPS. (Doc. 85-1.) Plaintiff admits he began preparing the lawsuit himself after his denial on September 25, 2015. (Doc. 89-1.) The record shows Plaintiff's bankruptcy proceedings did not conclude until December 17, 2015. (*In re Lyles*, No. 1:13-bk-14664-NWW.) Plaintiff offers no explanation for his failure to notify the bankruptcy court of his legal claim against USPS during the nearly three months his bankruptcy case was still open. *See Lewis*, 141 F. App'x at 424 (explaining "the duty of disclosure is a continuing one . . . .") (internal citations omitted). Instead, Plaintiff explains he did not file suit until December 29, 2019, when his bankruptcy case was over, "and so there was nothing to declare to the bankruptcy court." (Doc. 89-1 at 2.)

The timing of Plaintiff's filing is significant. Prior to his bankruptcy case being dismissed, Plaintiff knew he was filing a lawsuit, knew his bankruptcy disclosures required listing the value of all potential claims, and knew his bankruptcy case was still ongoing. (Doc. 89-1 at 2.) Despite

14

this, Plaintiff made no effort to notify the bankruptcy court of the claim. Instead, Plaintiff waited until twelve days after his bankruptcy case was dismissed to file his lawsuit and now uses the delay to claim he had no obligation to notify the bankruptcy court.

The undisputed facts of Plaintiff's actions do not "clearly establish a desire to apprise the court of the pending claim," *Eubanks*, 385 F.3d at 898 n.1, they do just the opposite. Plaintiff informed the EEO investigator he was seeking compensatory damages in February 2013, before his bankruptcy claim was filed, but did not disclose any claim against USPS in his filings. He never updated his filings during the two years his bankruptcy case was pending. Plaintiff also admitted he began preparing his lawsuit after September 25, 2015, but did not attempt to notify the bankruptcy court for the three months his bankruptcy case was still open. Instead, he waited until after his bankruptcy case was dismissed to file his current lawsuit and then claim he had nothing to disclose to the bankruptcy court. The record shows Plaintiff knew he had a monetary claim against USPS before he filed for bankruptcy, but he failed to notify the bankruptcy court of his claim at any point during his bankruptcy proceedings.

Plaintiff's claim that he did not understand the requirements of the form is not relevant to the Court's evaluation of his potential motive for concealment. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 212 (5th Cir. 1999) (explaining the party's "claimed lack of awareness of [the] statutory disclosure duty for its claims against Browning is not relevant."). He was represented by counsel in his bankruptcy proceedings and he acknowledges that his counsel explained the relevant provisions of the bankruptcy form. (Doc. 89-1 at 2.)

As a Chapter 13 petitioner, Plaintiff had a clear motive to conceal his claim against USPS for monetary damages to prevent the future proceeds from being distributed to creditors. Plaintiff

has not offered any specific facts to rebut this inference. Thus, Plaintiff has failed to place his motive for concealment in genuine dispute. As a result, the Court finds the undisputed facts indicate Plaintiff did have a motive to conceal the claim against USPS.

### c. Whether Plaintiff has demonstrated an absence of bad faith

Because Defendant has met her burden under the first parts of the *White* test, Plaintiff must demonstrate an absence of bad faith to survive the motion for summary judgment. *White*, 617 F.3d at 478 n.4. In evaluating an absence of bad faith, the court focuses particularly on any attempts "to advise the bankruptcy court of [an] omitted claim." *Davis v. Fiat Chrysler Auto. U.S., LLC*, 747 F. App'x 309, 316 (6th Cir. 2018) (citing *White*, 617 F.3d at 478). Because "the bankruptcy system depends on accurate and timely disclosures, the extent of these efforts, together with their effectiveness, is important." *White*, 617 F.3d at 480.

For example, in *White*, a debtor attempted to correct her initial omission of a harassment claim from her bankruptcy filing by disclosing the claim to her attorney and filing an "Application to Employ Counsel" for the harassment claim with the bankruptcy court. *Id.* She also partially amended her initial filing after a motion to dismiss on estoppel grounds was filed in the civil suit. *Id.* The Sixth Circuit was not persuaded. *Id.* The panel found her attempts "limited and ineffective" because she never adequately informed the court, trustee, or her creditors of the initial omission. *Id.* As a result, judicial estoppel was appropriate. *Id.* In contrast, the Sixth Circuit refused to affirm the application of judicial estoppel in *Eubanks* when the record established the debtor amended his bankruptcy schedules, tried to include the cause of action as a potential asset, and repeatedly placed the court and trustee on notice "through correspondence, motions, and status

conference requests." 385 F.3d at 898–99. Thus, "Plaintiff's desire to pursue a liability claim against Defendant was a fact known by all parties involved." *Id.*

Here, there is no evidence in the record that Plaintiff ever notified, or even attempted to notify, the bankruptcy court of his undisclosed claim against USPS. (Docs. 85, 86, 89.) Plaintiff claims his actions demonstrate an absence of bad faith because the bankruptcy form's requirements were unclear and Plaintiff did not view the EEOC claim as seeking monetary damages until after the bankruptcy case had been dismissed. (Doc. 89.) Ignorance of the form's requirements, however, is not relevant to the court's determination of an absence of bad faith. *In re Coastal Plains, Inc.*, 179 F.3d at 212. Furthermore, Plaintiff was represented by counsel and admits his bankruptcy attorney explained the relevant section of the form. (Doc. 89-1 at 2.)

In addition, the Court has already discussed that Plaintiff expressly affirmed he was seeking compensatory damages in his EEO Investigative Affidavit in February 2013, and knew as of September 25, 2015, that his only remedy against USPS was to file a lawsuit. Plaintiff's bankruptcy case began nearly seven months after Plaintiff explained he was seeking compensatory damages in his EEOC claim, but Plaintiff did not disclose the claim in his filings. Plaintiff had an additional two years during which time he was pursuing his EEOC claim and his bankruptcy case remained open, but he still did not notify the bankruptcy court of his claim against USPS. Even after September 25, when Plaintiff began preparing the current lawsuit against USPS, he had nearly three months in which his bankruptcy case was open, but he did not make any attempts to inform the bankruptcy court. Further, Plaintiff filed his suit on December 29, 2015, just twelve calendar days after his bankruptcy case was dismissed. (Docs. 2, 86.) Plaintiff could have filed

17

a motion with the bankruptcy court to reopen his case and amend his initial filing to correctly reflect his assets, but he chose not to do so.

There is no evidence from the record that Plaintiff made any attempt to inform the bankruptcy court, trustee, or his creditors of his initial omission. Plaintiff's actions do not demonstrate an absence of bad faith because he failed to act in any way to inform the bankruptcy court of his initial omission. *See White*, 617 F.3d at 480 ("These limited and ineffective attempts to correct her initial misfiling distinguish this case from *Eubanks* and make application of judicial estoppel appropriate."); *Bone*, 956 F.Supp.2d at 884 (holding the undisputed facts did not indicate an absence of bad faith because "the evidence indicates that Plaintiff never attempted to correct her misstatement."). Accordingly, the Court finds the undisputed facts do not demonstrate an absence of bad faith.

Defendant has thus established that there is no genuine dispute that Plaintiff has taken a contrary position to the one he took in his prior bankruptcy proceeding, which was adopted by the bankruptcy court and not attributable to mistake or inadvertence. Plaintiff cannot now assert he has a compensable claim against Defendant when he effectively asserted the opposite in bankruptcy court. The doctrine of judicial estoppel prevents such contrary positions from being taken.

IV. **CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendant's motion for summary judgment.

**An appropriate order will enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**